**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **LEAH GORMLY,** | § | |
| | § | |
| ***Plaintiff*,** | § | |
| **v.** | § | |
| | § | |
| **THE MICHAELS COMPANIES, INC.,** | § | **CASE NO. 3:26-cv-01500-L** |
| | § | |
| | § | |
| ***Defendant*.** | § | |
| | § | |

---

**DEFENDANT THE MICHAELS COMPANIES, INC.'S**
**PARTIAL MOTION TO DISMISS AND BRIEF IN SUPPORT**

---

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant The Michaels Companies, Inc. ("Michaels" or "Defendant"),[1] files this Partial Motion to Dismiss Plaintiff Leah Gormly's ("Gormly" or "Plaintiff") Original Petition [Doc. 1, Ex. C] (the "Petition"). For the reasons set forth in the accompanying Brief in Support, Michaels' respectfully requests that the Court dismiss Plaintiff's purported state law claims with prejudice to refiling the same for failure to state claims for which relief can be granted.

[1] Plaintiff identifies The Michaels Company, Inc. as Defendant and her employer. The Michael's Company, Inc. is a holding company and has no employees. The correct employing entity is Michaels Stores, Inc.

**Date:** June 17, 2026

Respectfully submitted,

*/s/ Courtney Barksdale Perez*
Courtney Barksdale Perez (Texas 24061135)
Emani J. Plummer (Texas 24144203)
**BAKER & HOSTETLER LLP**
2850 North Harwood Street, Suite 1100
Dallas, TX 75201
Phone: 214-210-1200
Fax: 214-210-1201
cbperez@bakerlaw.com
eplummer@bakerlaw.com

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I In accordance with the Federal Rules of Civil Procedure, I hereby certify that on June 17, 2026, the foregoing was served upon counsel of record via the Court's electronic filing system.

*/s/ Courtney Barksdale Perez*
Courtney Barksdale Perez

**TABLE OF CONTENTS**

**I. INTRODUCTION .......... 1**

**II. FACTUAL ALLEGATIONS .......... 2**

**III. LEGAL STANDARD .......... 4**

**IV. ARGUMENT .......... 5**

A. Plaintiff's Breach of Contract Claim Should Be Dismissed .......... 5

B. Plaintiff Fails to State a Plausible Claim for Bad Faith Dealing and Breach of Implied Promise of Good Faith Dealing .......... 7

C. Plaintiff's Fraudulent Inducement Claim Fails as a Matter of Law .......... 8

D. Texas Law Does Not Recognize Independent Claims for Violating Company Policies or Failing to Follow or Enforce Handbook Policies .......... 9

E. Plaintiff's Putative Intentional Infliction of Emotional Distress Should be Dismissed .......... 11

F. Plaintiff's Purported Claim For "Physical Injury Resulting from Airborne Toxins in the Building" Fails to State an Actionable Claim as a Matter of Law .......... 14

G. Texas Law Does Not Recognize an Independent Cause of Action for Concealment and Manipulation of Facts and Context .......... 16

H. Texas Law Does Not Support a Claim for "Manipulating and Lying to Employees." .......... 18

I. The Petition Does Not State a Claim for "Tampering with Potential Witnesses." .......... 18

J. Texas Law Does Not Recognize a Claim for "Enabling and Supporting Defamation." .......... 21

**V. CONCLUSION .......... 23**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Arbitrage Plaintiffs Group v. Tchuruk*,
291 F.3d 336 (5th Cir. 2002) .......... 5, 17

*Alexander v. Sandoval*,
532 U.S. 275 (2001) .......... 19

*Alkins Capital Investments, Ltd. v. Bank*,
No. 4:21-CV-03323, 2022 WL 18671068 (S.D. Tex. Jan. 20, 2022) .......... 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4, 9, 18, 23

*Badgett v. Nw. Res. Co.*,
818 F. Supp. 998 (W.D. Tex. 1993) .......... 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4, 9, 18, 23

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
343 F.3d 719 (5th Cir. 2003) .......... 17

*Black v. Dallas Cnty. Cmty. Coll. Dist.*,
No. 3:15-CV-3761-D, 2016 WL 915731 (N.D. Tex. Mar. 10, 2016) .......... 7, 10, 11

*Blackburn v. City of Marshall*,
42 F.3d 925 (5th Cir. 1995) .......... 5

*Bohnsack v. Varco, L.P.*,
668 F.3d 262 (5th Cir. 2012) .......... 8

*Bookman v. AIDS Arms, Inc.*,
No. 3:14-CV-814-B, 2014 WL 4968189 (N.D. Tex. Oct. 3, 2014) .......... 12

*Brown v. De La Cruz*,
156 S.W.3d 560 (Tex. 2004) .......... 19

*Brown v. Sabre, Inc.*,
173 S.W.3d 581 (Tex. App. 2005) .......... 10

*Childs v. Haussecker*,
974 S.W.2d 31 (Tex. 1998) .......... 14

*Doe I v. Scalia*,
58 F.4th 708 (3d Cir. 2023) .......................................................................... 15

*Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*,
614 F. App'x 731 (5th Cir. 2015) ........................................................................ 6

*Fed. Express Corp. v. Dutschmann*,
846 S.W.2d 282 (Tex. 1993) ............................................................................ 10

*Fernandez-Montes v. Allied Pilots Ass'n*,
987 F.2d 278 (5th Cir. 1993) ............................................................................ 4

*Flu Shots of Texas, Ltd. v. Lopez*,
No. 3:13-CV-144-O, 2014 WL 1327706 (N.D. Tex. Apr. 3, 2014) ........................... 9

*George v. Aztec Rental Ctr. Inc.*,
763 F.2d 184 (5th Cir. 1985) .......................................................................... 15

*Green v. Medco Health Sols. of Texas, LLC*,
947 F. Supp. 2d 712 (N.D. Tex. 2013), *aff'd sub nom. Green v. Medco Health Sols. of Texas, LLC*, 560 F. App'x 398 (5th Cir. 2014) ................................ 7

*Grimes v. Nationwide Prop. & Cas. Ins. Co.*,
2011 WL 13248993 (S.D. Tex. Nov. 22, 2011) ................................................ 5, 17

*Henderson v. Wells Fargo Bank*,
779 F. Supp. 3d 910 (S.D. Tex. 2025) ................................................................. 6

*Hernandez v. Off. Depot, Inc.*,
No. CIV.A. H-04-2630, 2005 WL 2095102 (S.D. Tex. Aug. 30, 2005) .................. 13

*Herrmann Holdings Ltd. v. Lucent Techs Inc.*,
302 F.3d 552 (5th Cir. 2002) ............................................................................ 5

*Hoffmann–La Roche Inc. v. Zeltwanger*,
144 S.W.3d 438 (Tex. 2004) ........................................................................... 13

*Kerlin v. Sauceda*,
263 S.W.3d 920 (Tex. 2008) ........................................................................... 16

*Kruszynski v. SGS N. Am. Inc.*,
No. CV H-16-1115, 2016 WL 7017428 (S.D. Tex. Nov. 30, 2016) ......................... 15

*Martinez v. City of Dallas, Texas*,
No. 3:16-CV-2890-M, 2017 WL 4298134 (N.D. Tex. Sept. 28, 2017) ...................... 9

*Miller v. CitiMortgage, Inc.*,
970 F. Supp. 2d 568 (N.D. Tex. 2013) .......... 8

*Moyer v. Jos. A. Bank Clothiers, Inc.*,
No. 3:11-CV-3076-L, 2013 WL 4434901 (N.D. Tex. Aug. 19, 2013) .......... 12

*Palombo v. Sw. Airlines Co.*,
No. 04-05-00825-CV, 2006 WL 1993783 (Tex. App. July 19, 2006) .......... 15

*Peatwatuck Enters. v. Truist Bank*,
773 F. Supp. 3d 366 (S.D. Tex. 2025) .......... 22

*S.E.C. v. Jackson*,
908 F. Supp. 2d 834 (S.D. Tex. 2012) .......... 16

*Shah v. Moss*,
67 S.W.3d 836 (Tex. 2001) .......... 16

*Smith Int'l, Inc. v. Egle Group, LLC*,
490 F.3d 380 (5th Cir. 2007) .......... 5

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
365 F.3d 353 (5th Cir. 2004) .......... 17

*Sparks v. Lockheed Martin Aerospace Corp.*,
No. H-97-3995, 1999 WL 438559 (S.D. Tex. Apr. 13, 1999) .......... 10

*Stelly v. Duriso*,
982 F.3d 403 (5th Cir. 2020) .......... 13

*Warner Bros. Ent., Inc. v. Jones*,
538 S.W.3d 781 (Tex. App.—Austin 2017), *aff'd*, 611 S.W.3d 1 (Tex. 2020) .......... 22

*Wiggins v. Golden Corral Corp.*,
802 F. App'x 812 (5th Cir. 2020) .......... 21

*Williams v. WMX Technologies, Inc.*,
112 F.3d 175 (5th Cir. 1997) .......... 5

**Statutes**

18 U.S.C. § 1512 .......... 19, 20

18 U.S.C. § 1512(a) .......... 19

18 U.S.C. § 1512(b) .......... 19

42 U.S.C. § 1985(2) .......... 19, 20

Tex. Lab. Code § 408.001(a) .......... 14, 15

Tex. Penal Code § 36.05.......... 18, 19, 20

Tex. Penal Code § 36.05(a) .......... 19

Tex. Penal Code § 36.05(d) .......... 19

**Rules**

Fed. R. Civ. P. 8 .......... 23

Fed. R. Civ. P. 9(b) ..........*passim*

Fed. R. Civ. P. 12(b)(6)..........*passim*

## I. INTRODUCTION

Plaintiff Leah Gormly ("Plaintiff" or "Ms. Gormly") was employed by Michaels Stores, Inc. ("Michaels") until her position was eliminated on June 27, 2025. She later filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued a Notice of Right to Sue on September 22, 2025. On December 29, 2025, Plaintiff filed suit against Michaels. The Petition attempts to transform a wide-ranging collection of workplace grievances into numerous purported state law claims, including breach of contract, breach of an implied duty of good faith, fraudulent inducement, alleged handbook and policy violations, alleged workplace bullying and psychological abuse, alleged physical injuries, concealment and manipulation of facts, witness tampering, and defamation related theories.

Each of Plaintiff's state law claims should be dismissed because the Petition does not plead facts establishing the elements of any cognizable claim under Texas law. Instead, it strings together workplace dissatisfaction, disagreement with an internal investigation, generalized handbook references, conclusory assertions of wrongdoing, and speculative accusations untethered to any enforceable contract, statutory right, or recognized common-law duty. Rule 12(b)(6) requires more than labels, conclusions, and disagreement with an employer's business and personnel decisions to state cognizable claim. And to the extent Plaintiff attempts to plead fraud-based theories, those theories also fail because the Petition does not identify the who, what, when, where, or how of any alleged misrepresentation or concealment as

required by Federal Rule of Civil Procedure 9(b). For these reasons, and those discussed below, Plaintiff's purported state law claims should be dismissed.

## II. FACTUAL ALLEGATIONS[2]

Plaintiff alleges she began working on Michaels' eCommerce Content team in April 2017 and was responsible for obtaining, preparing, organizing, and ensuring the quality of online image assets. (Pet. ¶¶ 1, 6).

As a result of the COVID-19 pandemic, Michaels permitted the eCommerce team to work remotely. (Pet. ¶ 10). In 2022, however, Michaels required its employees to return to in-office work. (Pet. ¶ 12). Plaintiff alleges that the office building she returned to had poor air quality, which she claims caused eye, sinus, and lung irritation, headaches, breathing problems, poor lighting, eye strain, reduced efficiency, and time needed at home to recover from discomfort or illness. (*Id.*). She further claims that she believed employees were experiencing "sick building syndrome" and questioned whether Legionella bacteria or mold could be present. (*Id.*).

The Petition claims that another member of the eCommerce Content team, identified as J.M., criticized, bullied, and mistreated Plaintiff beginning early in Plaintiff's employment and continuing for years. (Pet. ¶¶ 7, 13-14, 21, 24). Plaintiff claims that although she raised concerns about J.M. with her former manager, she concedes she did not report the alleged conduct to Human Resources ("HR"). (Pet. ¶¶ 7, 14).

[2] Michaels disputes the allegations in Plaintiff's Petition, including the allegations that Plaintiff suffered damages. Michaels accepts as true the factual allegations in Plaintiff's Petition solely for the purposes of this Motion.

Plaintiff also alleges that after two other employees on the Content team were terminated in May 2024, her workload increased, and she was left to perform work previously handled by three employees. (Pet. ¶¶ 16, 22). She alleges that this workload contributed to her anxiety, depression, and stress. (Pet. ¶¶ 27, 36-37).

According to Plaintiff, the situation escalated in March 2025 after J.M. became involved in Plaintiff's vendor image request assignment and criticized Plaintiff through Microsoft Teams, which Plaintiff claims caused severe anxiety and emotional distress. (Pet. ¶¶ 28-37).

Plaintiff alleges that as a result of interpersonal issues with J.M. and work stress, she sought help from a therapist. (Pet. ¶ 36). On March 25, 2025, Plaintiff submitted a therapist's letter recommending that she work from home, and Michaels granted her a 90-day remote work accommodation. (Pet. ¶¶ 37, 39). Plaintiff alleges that in response to receiving the therapist's letter, Michaels conducted an investigation into J.M.'s conduct. (Pet. ¶ 39). On May 5, 2025, during Plaintiff's monthly touch base with her manager, Michaels shared the results of that investigation with Plaintiff. (Pet. ¶ 42). Plaintiff contends that Michaels "arbitrarily limited the facts and timeframe" and concluded both Plaintiff and J.M. were responsible for the interpersonal issues. (*Id.*). Plaintiff disagreed with that conclusion, asserting that Michaels' response "defied logic, violated handbook rules, and appear[ed] to have violated certain laws, [and] served to minimize and negate the company's liability for allowing and enabling the growing, ongoing abuse." (*Id.*).

Plaintiff alleges that she completed Michaels' annual Engagement Survey in May 2025 and submitted critical comments, including comments concerning alleged OSHA related issues at the Support Center building. (Pet. ¶¶ 46, 60). Although Plaintiff alleges that Michaels represented the survey was confidential, she also alleges that the company later learned the identities of employees who submitted comments. (Pet. ¶¶ 46, 60).

Plaintiff alleges that, on June 27, 2025, shortly after her first 90-day remote-work accommodation period ended, Michaels informed her that her position had been eliminated. (Pet. ¶ 53). She claims that she was the oldest woman on the eCommerce Content team. (*Id.*). As part of her offboarding materials, Michaels offered Plaintiff a Separation Agreement and release, which Plaintiff declined to sign. (Pet. ¶ 55).

Plaintiff further alleges that, after her employment ended, she was prescribed medication for anxiety and depression, experienced symptoms she associates with PTSD, and could not continue therapy because her insurance ended with her employment. (Pet. ¶¶ 57-59).

## III. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th

Cir. 1993). While dismissal of a claim under Rule 12(b)(6) is generally disfavored, the court should exercise its power to dismiss a complaint if it lacks an allegation regarding an element required to obtain relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (citations omitted).

Furthermore, state common law fraud claims must comply with the particularity requirements of Rule 9(b). *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) ("We see no principled reason why the state claims of fraud should escape the pleading requirements of the federal rules…"). The Fifth Circuit "interprets Rule 9(b) strictly" and requires a plaintiff pleading fraud to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002) (internal quotations omitted). Simply put, Rule 9(b) requires, at a minimum, that the complaint set forth "the who, what, when, where, and how" of the alleged fraud. *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002). Any fraud claim that is not pled with particularity "must be dismissed." *Grimes v. Nationwide Prop. & Cas. Ins. Co.*, 2011 WL 13248993, at *9 (S.D. Tex. Nov. 22, 2011).

## IV. ARGUMENT

### A. Plaintiff's Breach of Contract Claim Should Be Dismissed.

Under Texas law, a breach of contract claim requires allegations showing "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages resulting from the breach." *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007). The same is

true for an implied contract theory: the plaintiff must plead facts showing a valid implied contract, performance, breach, and resulting damages. *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731, 744 (5th Cir. 2015).

To survive a Rule 12(b)(6) motion, a plaintiff asserting breach of contract must do more than invoke the existence of a contract in conclusory terms – she must plead the substance of the contract that allegedly gives rise to a right to recover. *Henderson v. Wells Fargo Bank*, 779 F. Supp. 3d 910, 917-18 (S.D. Tex. 2025). At minimum, the plaintiff must identify the contractual provisions allegedly breached or plead facts showing the relevant terms of the agreement. *Id.*

Plaintiff's Petition does neither. The Petition identifies no express contract (because none exists). Plaintiff does not allege a written contract, attach one, quote one, or identify a single contractual term Michaels supposedly agreed to and later breached. Nor does the Petition come close to alleging an oral or implied contract. It pleads no facts showing a definite offer, acceptance, a meeting of the minds, consideration, definite material terms, or any specific contractual obligation owed by Michaels. Instead, Plaintiff simply states that she "reserves the right to amend … [b]reach of contract" while omitting the basic facts necessary to make that assertion plausible. That is not enough to survive Rule 12(b)(6).

The Petition's reference to "The Michaels Employee manual" does not cure that defect. (Pet. ¶ 38). Under Texas law, employee handbooks and policy manuals are presumed to be guidelines governing the employment relationship, not binding contracts, unless they contain language specifically expressing an intent to be

contractually bound. *Black v. Dallas Cnty. Cmty. Coll. Dist.*, No. 3:15-CV-3761-D, 2016 WL 915731, at *3 (N.D. Tex. Mar. 10, 2016) (citing *Brown v. Sabre, Inc.*, 173 S.W.3d 581, 585 (Tex. App. 2005)). The Petition does not allege any such language, identify any binding provision, or explain how the manual created contractual obligations enforceable against Michaels.

The only other document identified in the Petition is the Separation Agreement and Release Michaels offered Gormly in connection with her layoff. (Pet. ¶ 55). But Plaintiff affirmatively alleges that she did not sign that agreement and states no facts to suggest a breach of this agreement. (*Id.*).

Because the Petition does not plausibly allege the existence of any enforceable express, oral, or implied contract, Gormly fails to state a claim for breach of contract, and that claim should be dismissed under Rule 12(b)(6).

### B. Plaintiff Fails to State a Plausible Claim for Bad Faith Dealing and Breach of Implied Promise of Good Faith Dealing.

Plaintiff's proposed claims for bad faith dealing and breach of implied promise of good faith dealing should be dismissed because they are not merely inadequately pleaded – they are not cognizable on the facts alleged. Under Texas law, a duty of good faith and fair dealing arises only where the parties' contract expressly creates such a duty or where a special relationship exists between them. *Green v. Medco Health Sols. of Texas, LLC*, 947 F. Supp. 2d 712, 731 (N.D. Tex. 2013), *aff'd sub nom. Green v. Medco Health Sols. of Texas, LLC*, 560 F. App'x 398 (5th Cir. 2014). Courts recognize such a special relationship only in narrow circumstances, such as certain insurance or fiduciary relationships – not in ordinary employment disputes. *Id.*

As explained above, Plaintiff has not adequately alleged an express contract with Michaels. Nor has she alleged facts that could establish any special relationship giving rise to a duty of good faith and fair dealing. Instead, this case involves nothing more than an ordinary at-will employment dispute. Because Texas law does not impose a duty of good faith and fair dealing in that context, Plaintiff fails to state a plausible claim for relief and the claim should be dismissed.

**C. Plaintiff's Fraudulent Inducement Claim Fails as a Matter of Law.**

Fraudulent inducement is a "species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof. That is … the elements of fraud must be established as they relate to an agreement between the parties." *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012) (quoting *Haase v. Glazner*, 62 S.W.3d 795, 798-99 (Tex. 2001).

To state such a claim under Texas law, a plaintiff must allege that the defendant made a material false representation, knew it was false or made it recklessly and without knowledge of its truth, intended the plaintiff to act on it, and that the plaintiff actually relied on the representation to her detriment. *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 582 (N.D. Tex. 2013). Because the claim sounds in fraud, Federal Rule of Civil Procedure 9(b) applies and requires the plaintiff to plead the alleged misrepresentation with particularity by identifying the specific fraudulent statement, the speaker, when and where the statement was made, and why it was false. *Id.* Absent those allegations, a complaint fails to state a plausible fraudulent inducement claim and should be dismissed.

Plaintiff's claim fails at the threshold because Plaintiff has not pleaded a contract between the parties. Without a contract, there can be no fraudulent inducement claim as a matter of law. *See Flu Shots of Texas, Ltd. v. Lopez*, No. 3:13-CV-144-O, 2014 WL 1327706, at *9 (N.D. Tex. Apr. 3, 2014) (where the defendant is not alleged to be a party to the contract, "there can be no detrimental reliance, and therefore no fraudulent inducement claim"). The Petition likewise does not come close to alleging the required elements of fraud tied to any actual agreement between the parties. It also fails to allege the basic particulars Rule 9(b) demands – no specific misrepresentation, no identified speaker, no time or place, and no explanation of falsity. Plaintiff's threadbare pleading is legally insufficient and warrants dismissal.

**D. Texas Law Does Not Recognize Independent Claims for Violating Company Policies or Failing to Follow or Enforce Handbook Policies.**

To survive Rule 12(b)(6), a complaint must plead enough facts to state a claim that is plausible on its face. *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. But Plaintiff's allegations that Michaels failed to follow, enforce, or comply with its own internal policies do not state an independent cause of action under Texas law. Texas follows the at-will employment doctrine, under which employment for an indefinite term may be terminated by either party, at any time, with or without cause, absent a specific agreement to the contrary. *Martinez v. City of Dallas, Texas*, No. 3:16-CV-2890-M, 2017 WL 4298134, at *2 (N.D. Tex. Sept. 28, 2017) (citing *Fed. Express Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993)).

Texas courts do not treat ordinary workplace policies, employee handbooks, or personnel procedures as enforceable legal duties merely because an employer

attempts to follow them. *Badgett v. Nw. Res. Co.*, 818 F. Supp. 998, 1002 (W.D. Tex. 1993) ("Compliance, or attempted compliance, with [the] guidelines found in an employee manual should not be turned against an employer as evidence that it treated the manual as a contract.").

To alter at-will employment, an employer must make a clear, specific, and unequivocal promise that it intends to be bound to limit its right to terminate or discipline the employee. *Sparks v. Lockheed Martin Aerospace Corp.*, No. H-97-3995, 1999 WL 438559, at *6 (S.D. Tex. Apr. 13, 1999) (quoting *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998)). General statements in personnel manuals, employee handbooks, or policy documents are insufficient. *See Fed. Express Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993); *Brown v. Sabre, Inc.*, 173 S.W.3d 581, 585 (Tex. App.--Fort Worth 2005).

Nor may Plaintiff repackage an alleged policy violation as a standalone tort or contract claim. A company policy may guide internal expectations, but it does not, without more, create a private right of action or impose an independent legal duty enforceable by an employee. *See Black*, 2016 WL 915731, at *7 (holding that Texas law does not recognize an independent cause of action for violating company policies or failing to follow handbook procedures absent an express agreement to be bound).

The specific allegations in the Petition do not change the analysis. Plaintiff alleges that Michaels' employee manual included generalized statements regarding an "open-door policy," confidentiality in communications with HR or management, and "zero tolerance" for bullying, harassment, threats, discrimination, and similar

conduct. (Pet. ¶ 38). She further alleges that she relied on those statements when contacting HR, submitting a therapist's letter and written statement, receiving a 90-day remote-work accommodation, and participating in an internal investigation. (Pet. ¶¶ 39, 42). Plaintiff also challenges Michaels' communications and investigation, including their scope, conclusions, and alleged inconsistency with the handbook, but identifies no specific law that Michaels allegedly violated. (Pet. ¶ 42).

Plaintiff's allegations do not identify any enforceable promise, statutory violation, or independent legal duty. At most, they reflect Plaintiff's disagreement with Michaels' internal HR process and the outcome of its investigation. But absent a statutory violation or enforceable contract, disagreement with an internal investigation's scope, fairness, tone, or outcome does not create a private right of action. *See Black*, 2016 WL 915731, at *7.

Accordingly, to the extent Plaintiff attempts to assert claims for violation of company policies, failure to follow handbook policies, or failure to enforce internal procedures, those claims fail as a matter of law and should be dismissed under Rule 12(b)(6).

### E. Plaintiff's Putative Intentional Infliction of Emotional Distress Should be Dismissed.

Although Plaintiff does not expressly plead a claim for intentional infliction of emotional distress ("IIED"), she appears to invoke that theory by "reserv[ing] the right to amend" claims for "harassment, bullying, and intentional psychological abuse" and "physical injury resulting from psychological abuse and mental torture inflicted by

superiors in the workplace." (Pet. p. 22). To the extent Plaintiff purports to assert an IIED claim that theory fails as a matter of law and should be dismissed.

To state an IIED claim under Texas law, a plaintiff must plead facts showing that: "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused emotional distress; and (4) the resulting emotional distress was severe." *Moyer v. Jos. A. Bank Clothiers, Inc.*, No. 3:11-CV-3076-L, 2013 WL 4434901, at *6 (N.D. Tex. Aug. 19, 2013) (quoting *Hoffmann–La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004)).

Under Texas law, IIED is a narrow "gap-filler" tort available only in rare circumstances where a defendant intentionally inflicts severe emotional distress in a manner so unusual that the plaintiff has no other recognized theory of redress. *Bookman v. AIDS Arms, Inc.*, No. 3:14-CV-814-B, 2014 WL 4968189, at *5 (N.D. Tex. Oct. 3, 2014) (quoting *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004)). Thus, an IIED claim is unavailable when the core of the plaintiff's complaint is covered by another statutory or common law theory. *Id.*

Plaintiff's IIED claim fails because it merely recasts other available legal theories. Plaintiff's IIED claim rests on the same facts underlying her other attempted claims, including her claims of harassment, discrimination, retaliation, hostile work environment under Title VII and the Texas Labor Code, and related workplace grievances, as well as alleged handbook violations, purported workplace bullying or harassment, alleged manipulation of facts, and termination-related grievances. Those allegations are addressed, if at all, by recognized statutory or common law claims.

IIED is not a fallback cause of action for employment grievances that do not satisfy the elements of those claims. *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004).

This is especially true here because Plaintiff's supposed IIED theory is predicated on the same conduct she invokes to support her other "reserved" claims. Courts applying Texas law hold that a plaintiff generally cannot maintain an IIED claim when the essence of the claim is discrimination, harassment, retaliation, or hostile work environment conduct covered by Title VII or analogous employment statutes. *See Stelly v. Duriso*, 982 F.3d 403, 407-09 (5th Cir. 2020) (vacating default judgment on IIED claim because plaintiff's alleged emotional-distress injury was based on the same sexual-harassment conduct supporting her Title VII claims). Plaintiff cannot evade the pleading requirements, statutory limitations, or remedial scheme governing her Title VII theories by recasting the same alleged conduct as intentional infliction of emotional distress.

The claim also fails on the merits. "Extreme and outrageous" conduct means conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Hernandez v. Off. Depot, Inc.*, No. CIV.A. H-04-2630, 2005 WL 2095102, at *8 (S.D. Tex. Aug. 30, 2005) (quoting *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999)). "[M]ere insults, indignities, threats, annoyances, petty oppressions," workplace criticism, personnel decisions, or unfair treatment do not satisfy that demanding standard. *Id.* Texas law, therefore, does not extend IIED to

ordinary employment disputes, even when the alleged conduct is unfair, insensitive, humiliating, or distressing. The Petition alleges workplace criticism, coworker hostility, management decisions, an allegedly flawed investigation, workload, handbook issues, and termination. Those allegations do not meet the demanding "extreme and outrageous" standard as a matter of law. Accordingly, any IIED claim should be dismissed.

### F. Plaintiff's Purported Claim For "Physical Injury Resulting from Airborne Toxins in the Building" Fails to State an Actionable Claim as a Matter of Law.

Plaintiff's allegations concerning alleged "sick building syndrome," poor indoor air quality, lighting, mold, Legionella bacteria, headaches, eye strain, sinus and lung irritation, and other generalized workplace discomfort fail at the threshold because they do not identify any independent cause of action recognized under Texas law. (Pet. ¶ 12). At most, Plaintiff alleges that she believed the building was unpleasant, inefficient, or potentially unhealthy, and that she experienced physical discomfort while working there. Those allegations may describe workplace complaints, but they do not plead the elements of any recognized Texas tort, statutory claim, or contractual duty. A medical or environmental label is not a legal cause of action, and Rule 12(b)(6) requires more than a conclusory assertion that workplace conditions were undesirable or potentially unhealthy. *See Childs v. Haussecker*, 974 S.W.2d 31, 43 (Tex. 1998) (explaining that suspicion of a causal link between exposure and injury, without objective verification, does not establish accrual of a legally cognizable claim).

In any event, to the extent Plaintiff seeks damages for a workplace injury, the Texas Workers' Compensation Act supplies the exclusive remedy. Under Texas Labor

Code § 408.001(a), recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance against the employer for a work-related injury. Tex. Lab. Code § 408.001(a). Because Plaintiff alleges that her claimed physical injuries resulted from alleged airborne toxins in Defendant's building while she was working, her workplace-injury theory is barred by that exclusive-remedy provision. *Kruszynski v. SGS N. Am. Inc.*, No. CV H-16-1115, 2016 WL 7017428, at *5 (S.D. Tex. Nov. 30, 2016) (granting summary judgment in favor of the employer because a workplace injury claim is barred by the Texas Workers' Compensation Act's exclusive remedy provision); *Palombo v. Sw. Airlines Co.*, No. 04-05-00825-CV, 2006 WL 1993783, at *2 (Tex. App. July 19, 2006) (explaining that plaintiffs' "sick building syndrome" stemmed from workplace exposure).

Plaintiff also cannot repackage alleged OSHA-related concerns as a private civil claim. The Occupational Safety and Health Act ("OSHA") establishes an administrative enforcement scheme administered by the Secretary of Labor and OSHA; it does not create a general private right of action against an employer for alleged workplace-safety violations. *See Doe I v. Scalia*, 58 F.4th 708, 711 (3d Cir. 2023) ("In general, OSHA, rather than private litigants, is responsible for assuring workplace safety."); *George v. Aztec Rental Ctr. Inc.*, 763 F.2d 184, 186 (5th Cir. 1985) (explaining that OSHA regulations may inform standards of conduct but do not themselves create a private cause of action). Thus, even accepting Plaintiff's allegation that she viewed the building conditions as implicating "OSHA matters," that characterization does not transform her concerns into an actionable claim. (Pet. ¶ 46).

Plaintiff does not allege that she filed an OSHA complaint, exhausted any OSHA administrative process, or asserted a timely OSHA retaliation claim. (*See* Pet.)

Accordingly, Plaintiff's purported claim for "physical injury resulting from airborne toxins in the building" should be dismissed.

### G. Texas Law Does Not Recognize an Independent Cause of Action for Concealment and Manipulation of Facts and Context.

Plaintiff's allegations that Michaels "concealed" or "manipulated" facts and context fail to state a cognizable, independent cause of action under Texas law. To the extent Plaintiff attempts to plead fraud by nondisclosure, or a related fraud by omission theory, any such theory fails because the Petition does not plead the essential elements of fraud, much less plead them with the particularity Rule 9(b) requires.

Texas courts recognize fraudulent concealment as an equitable tolling doctrine, not as an independent tort. *See Shah v. Moss*, 67 S.W.3d 836, 841 (Tex. 2001) ("Fraudulent concealment tolls limitations until the plaintiff discovers the fraud or could have discovered the fraud with reasonable diligence."); *Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008).

To invoke that doctrine, a plaintiff must show both that "the defendant concealed the conduct complained of" and that the plaintiff, despite due diligence, failed to discover the facts forming the basis of the claim. *See S.E.C. v. Jackson*, 908 F. Supp. 2d 834, 869 (S.D. Tex. 2012). Mere silence is insufficient; the defendant must engage in some "trick or contrivance tending to exclude suspicion and prevent inquiry." *Id.* Likewise, fraud by nondisclosure requires facts showing that the "defendant failed to disclose material facts to the plaintiff, and that the plaintiff

suffered injury due to acting without knowledge of the undisclosed facts." *Alkins Capital Investments, Ltd. v. Bank*, No. 4:21-CV-03323, 2022 WL 18671068, at *6 (S.D. Tex. Jan. 20, 2022) (citing *Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840, 850 (Tex. App.—Houston [14th Dist.] 2010)). Because Plaintiff's concealment theory sounds in fraud, Rule 9(b) requires Plaintiff to plead, with particularity, the "who, what, when, where, and how" of the alleged concealment. *Tchuruk*, 291 F.3d 336 at 350; *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (Rule 9(b) applies to fraud-by-omission claims).

The Petition pleads none of those required facts. Plaintiff does not identify any specific fact Michaels allegedly concealed; who concealed it; when, where, or how the concealment occurred; a duty required Michaels to disclose the information; or how Plaintiff allegedly relied on any omission to her detriment. Nor does she plead facts showing that Michaels had actual knowledge of a concealed wrong and a fixed purpose to conceal it. Instead, Plaintiff relies on bare, generalized assertions that she did "not receive[] anything in writing regarding any 'investigation'" or "manipulated the facts" in connection with internal communications and an investigation. (Pet. ¶ 42). Those conclusory allegations are precisely the kind of labels and conclusions that *Twombly*, *Iqbal*, and Rule 9(b) reject. *See Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (Rule 9(b) requires plaintiffs to plead the particulars of alleged fraud); *Grimes*, 2011 WL 13248993, at *3 (dismissing fraud claim not pleaded with particularity). Because Texas law does not recognize Plaintiff's asserted "concealment and manipulation" theory as a cause of action, and because any fraud-

based version of that theory is not pleaded with particularity, the Court should dismiss the claim.

### H. Texas Law Does Not Support a Claim for "Manipulating and Lying to Employees."

Plaintiff's purported claim for "manipulating and lying to employees" should be dismissed because Texas law recognizes no standalone cause of action by that name. Plaintiff cannot avoid Rule 12(b)(6) by assigning a label to generalized workplace grievances where the pleaded facts do not establish any recognized legal duty, statutory right, or common law cause of action. Nor can Plaintiff transform ordinary workplace dissatisfaction into a legally cognizable claim merely by characterizing it in conclusory and inflammatory terms. *See Twombly*, 550 U.S. at 555 (a complaint must contain more than "labels and conclusions"); *Iqbal*, 556 U.S. at 678 (courts need not accept legal conclusions couched as factual allegations).

To the extent Plaintiff's claim of "lying to employees" attempts to state a common law fraud claim under Texas law, the claim fails for the same reasons her other purported fraud-related claims fail. Plaintiff does not plead the essential elements of fraud, nor has she pleaded them with the particularity as required by Rule 9(b). Accordingly, Plaintiff's "lying" theory fails as a matter of law and should be dismissed.

### I. The Petition Does Not State a Claim for "Tampering with Potential Witnesses."

Plaintiff's purported claim for "tampering with potential witnesses" should be dismissed because the Petition identifies no cognizable private cause of action under Texas or federal law. Witness tampering is criminalized under Texas Penal Code §

36.05. That statute prohibits, among other things, offering a benefit to, or coercing, a witness or prospective witness in an official proceeding with the intent to influence testimony, withhold evidence, evade legal process, or otherwise interfere with the proceeding. Tex. Penal Code § 36.05(a). But Section 36.05 is a criminal statute; it does not create a private right of action for civil damages. *See* Tex. Penal Code § 36.05(d); *see also Brown v. De La Cruz*, 156 S.W.3d 560, 566 (Tex. 2004) (explaining that courts do not imply a private cause of action from a statute unless the legislature clearly intended to create one).

The same is true under federal law. Federal witness tampering is addressed in 18 U.S.C. § 1512, which criminalizes conduct such as knowingly using intimidation, threats, corrupt persuasion, misleading conduct, or physical force with intent to influence, delay, or prevent testimony in an official proceeding, or to cause a person to withhold testimony, records, documents, or other evidence. 18 U.S.C. § 1512(a), (b). Like its Texas counterpart, Section 1512 is criminal in nature and does not authorize a private civil lawsuit based on alleged workplace communications, internal investigations, or witness-related conduct. Congress, not the courts, must create private rights of action, and Section 1512 contains no such authorization. *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001) (private rights of action must be created by Congress, and courts may not create one absent statutory intent).

Although federal law recognizes a limited civil remedy under 42 U.S.C. § 1985(2), that provision applies only to certain conspiracies to obstruct justice; it is not a general workplace "witness tampering" statute. The statute prohibits conspiracies

to deter, by force, intimidation, or threat, a party or witness from attending or testifying freely and truthfully in a court of the United States, or to retaliate against a party or witness for doing so. 42 U.S.C. § 1985(2). The Petition alleges none of that. Plaintiff does not identify any federal court (or any court at all) proceeding in which Michaels deterred a party or witness from attending or testifying; does not allege force, intimidation, threats, or retaliation tied to any court testimony; and does not plead any agreement between two or more conspirators.

Nor does the Petition plead facts that would satisfy the elements of witness tampering even if such a civil claim existed. Plaintiff appears to rely on allegations that, shortly after her termination, Michaels sought to meet with another employee who also had been laid off. From that ordinary alleged fact, Plaintiff leaps to the conclusory assertion that the purpose of the meeting was to "gaslight, tamper with potential witnesses, [and] gather 'intelligence[.]'" (Pet. ¶ 56). Plaintiff further speculates that Michaels "was attempting to gather discovery prior to a possible lawsuit." (*Id.*) Even assuming *arguendo* those allegations as true, they do not state a claim for witness tampering. Plaintiff does not identify any actual or prospective witness in an official proceeding whom Michaels allegedly threatened, coerced, bribed, intimidated, or corruptly persuaded. She does not allege that Michaels caused any witness to testify falsely, withhold testimony or documents, evade legal process, or refuse to appear in response to a subpoena. Nor does she plead facts showing the requested meeting was made with the specific intent required under Texas Penal Code § 36.05, 18 U.S.C. § 1512, or 42 U.S.C. § 1985(2). At most, the Petition alleges a request

for a conversation and Plaintiff's speculation about Michaels' motivations. Speculation about why an employer wanted to speak with a former employee is not witness tampering. Nor does it state a plausible claim under any recognized Texas or federal theory.

Accordingly, to the extent Plaintiff attempts to assert a standalone civil claim for "tampering with potential witnesses," the claim fails as a matter of law and should be dismissed under Rule 12(b)(6).

### J. Texas Law Does Not Recognize a Claim for "Enabling and Supporting Defamation."

Plaintiff's purported claim for "enabling and supporting defamation" fails as a matter of law and should be dismissed under Rule 12(b)(6) because Texas law recognizes no such independent cause of action.

Under Texas law, defamation requires "(1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." *Wiggins v. Golden Corral Corp.*, 802 F. App'x 812, 813 (5th Cir. 2020) (quoting *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015)). "Publication occurs if the defamatory statements are communicated orally, in writing, or in print to some third person who is capable of understanding their defamatory import and in such a way that the third person did so understand." *Id.* (quoting *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017)). Thus, liability turns on the defendant's publication of, or legal responsibility for, a defamatory statement, not on a generalized allegation that the defendant "enabled," "supported," or failed to prevent someone else's speech.

Plaintiff cannot avoid those requirements by rebranding a deficient defamation theory as "enabling and supporting" defamation. Texas does not recognize a freestanding aiding and abetting claim untethered to a viable underlying tort. *Peatwatuck Enters. v. Truist Bank*, 773 F. Supp. 3d 366, 372 (S.D. Tex. 2025) (citing *Juhl v. Airington*, 936 S.W.2d 640, 644–45 (Tex. 1996)). Accordingly, Plaintiff's undefined derivative claim must be dismissed unless she pleads a recognized theory of liability supported by facts satisfying each element of an underlying defamation claim.

Nor does Texas civil conspiracy law save the claim. Although Texas recognizes civil conspiracy in defamation cases, conspiracy is not an independent tort; it is derivative and depends on a viable underlying tort. *Warner Bros. Ent., Inc. v. Jones*, 538 S.W.3d 781, 813-14 (Tex. App.—Austin 2017), *aff'd*, 611 S.W.3d 1 (Tex. 2020) (holding trial court did not err in refusing to dismiss conspiracy claim where it depended on a viable defamation claim).

The pleaded facts confirm the defect. Plaintiff alleges another employee "defam[ed] and attack[ed]" her skills and character behind her back. (Pet. ¶ 21). Even if accepted as true, those allegations concern statements allegedly made and repeated by another employee. They do not identify any specific false statement published by Defendant, and they do not plead facts showing Defendant is legally responsible for that employee's alleged publication under any recognized Texas theory. At most, Plaintiff seeks to impose liability because Defendant allegedly permitted, tolerated, or

failed to prevent the employee's speech. Texas law does not recognize that undefined "enabling and supporting" theory.

Conclusory labels that Defendant "enabled," "supported," "ratified," or "facilitated" another person's alleged defamation are not enough under Rule 8 and do not state a defamation claim under Texas law. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Because Plaintiff pleads no independent cause of action recognized by Texas law and no facts establishing the essential elements of defamation against Defendant, the "enabling and supporting defamation" claim should be dismissed with prejudice.

## V. CONCLUSION

For all the foregoing reasons, Defendant The Michaels Companies, Inc. respectfully requests that this Court grant its Motion to Dismiss, dismiss Plaintiff's purported state-law claims with prejudice, and grant any other relief the Court deems appropriate.